UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NEVADA COLLECTORS ASSOCIATION, | Case No. 2:20-CV-7 JCM (EJY) |
| Plaintiff(s), | ORDER |
| v. | |
| STATE OF NEVADA DEPARTMENT OF BUSINESS ANMD INDUSTRY FINANCIAL INSTITUTIONS DIVISION, et al., | |
| Defendant(s). | |

Presently before the court is the matter of *Nevada Collectors Association v. State of Nevada Department of Business and Industry Financial Institutions Division et al.*, case number 2:20-cv-00007-JCM-EJY.

## I.    Background

This action arises from the passage of Assembly Bill 477 ("A.B. 477")—recently enacted in the 80th session of the Nevada Legislature—and its interplay with defendant Las Vegas Justice Court's ("Justice Court") Rule 16 ("JCR 16"). (ECF No. 38). Plaintiff Nevada Collectors Association ("NCA") alleges the following: NCA is a nonprofit cooperative corporation whose members consist of small businesses that collect consumer debts "on behalf of, for the account of, or as assignees of businesses that sell goods and/or services to consumers which are primarily for personal, family, or household purposes." *Id*. Most of the actions initiated by NCA members are to recover consumer debts in the amount of $5,000.00 or less. *Id*.

Many of NCA's members are debt collectors within the meaning of the Fair Debt Collection Practices Act ("FDCPA") and are thus subject to its legal requirements. *Id*. Of particular relevance here, the FDCPA requires a debt collector to commence any civil action for

the repayment of a consumer debt "in the judicial district or similar legal entity—[A] in which such consumer signed the contract sued upon; or [B] in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a)(2)(A–B).

Pursuant to NRS 4.370, the justice courts have jurisdiction over all civil actions arising on contract for the recovery of money in which the amount in controversy does not exceed $15,000.00. NRS 4.370(1)(a). And pursuant to JCR 16, corporations and limited liability corporations are prohibited from appearing before a justice court without an attorney. (ECF No. 1). Accordingly, NCA members are generally required to file any action to collect unpaid consumer debt in a justice court, and to do so through an attorney. *Id*.

Section 18 of A.B. 477 permits the recovery of attorney's fees for a prevailing plaintiff in an action to collect a consumer debt "only if the consumer form contract or other document evidencing the indebtedness sets forth an obligation of the consumer to pay such attorney's fees." (ECF No. 11-2). Additionally, Section 18 caps said recovery of attorney's fees at 15% of the amount of the consumer debt. *Id*.

Under Section 19 of A.B. 477, if a debtor is the prevailing party in any action to collect a consumer debt, the debtor is entitled to an award of reasonable attorney's fees. *Id*. Section 19 further provides that "[t]he amount of the debt that the creditor sought may not be a factor in determining the reasonableness of the award." *Id*.

In light of the foregoing, NCA reasons that: (1) pursuant to the FDCPA, NCA members are generally required to file any action to collect unpaid consumer debt in a justice court; (2) JCR 16 requires many of those members to be represented by an attorney; (3) because many NCA members are required to be represented by an attorney, significant legal costs are incurred; and (4) A.B. 477 unlawfully caps a consumer creditor's recovery of attorney's fees at 15% of the amount of the consumer debt, making it cost prohibitive for many NCA members to retain an attorney and meaningfully access the courts. (ECF No. 1).

On November 13, 2019, NCA filed a complaint in the Eighth Judicial District Court for the State of Nevada alleging five causes of action: (1) violation of substantive due process based on Section 18 of A.B. 477 and JCR 16; (2) violation of substantive and procedural due process

based on Section 19 of A.B. 477; (3) violation of equal protection based on Section 18 of A.B. 477; (4) violation of equal protection based on Section 19 of A.B. 477; and (5) declaratory relief. *Id*. This action was removed to this court on January 2, 2020. *Id*. NCA filed an amended complaint to add defendant State of Nevada Department of Business and Industry Financial Institutions Division's ("FID") newly-appointed commissioner, Sandy O' Laughlin ("O'Laughlin"), as a defendant. (ECF Nos. 20; 37; 38).

Now, FID and Justice Court each move to be dismissed from this case. (ECF Nos. 10; 15). NCA requests that the court issue a preliminary injunction enjoining FID and/or Justice Court from enforcing A.B. 477, JCR 16, or both. (ECF No. 12).

## II.     Legal Standard

Ordinarily, the question of whether a federal district court can exercise jurisdiction and whether it should are one and the same: "where the district court is presented with a case within its original jurisdiction, it has 'a "virtually unflagging obligation" to exercise the jurisdiction conferred upon [it] by the coordinate branches of government and duly invoked by litigants.'" *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006) (quoting *United States v. Rubenstein,* 971 F.2d 288, 293 (9th Cir.1992) (quoting in turn *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976))). However, there are cases which fall within the district court's jurisdiction but are nonetheless inappropriate for federal review due to "deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) (citations omitted); *see also Growe v. Emison,* 507 U.S. 25, 32 (1993). Notably, abstention—which "derives from the discretion historically enjoyed by courts of equity"—is appropriate only when the relief sought is equitable in nature. *Quackenbush*, 517 U.S. at 727–30.

Because of its "virtually unflagging obligation" to exercise its jurisdiction, "abstention is permissible only in a few 'carefully defined' situations with set requirements." *United States v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI* "), 491 U.S. 350, 359 (1989) (quoting in turn *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988))). Thus, "[a]bstention from the exercise of federal jurisdiction is the

exception, not the rule." *City of Tucson v. U.S. W. Commc'ns, Inc.*, 284 F.3d 1128, 1132 (9th Cir. 2002) (quoting *Colo. River Water Conservation Dist.,* 424 U.S. at 813).

## III. Discussion

Federal district courts may abstain in a variety of narrow circumstances, as established by Supreme Court cases such as *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); and *Colo. River Water Conservation Dist.*, 424 U.S. 800. As a threshold matter, the court notes that NCA seeks only equitably, namely injunctive, relief in this action. (*See* ECF Nos. 1; 12; 38). Therefore, if the principles of comity and federalism so demand, abstention may be appropriate. In this case, the court finds reason to abstain under *Burford*.

> In an effort to limit the application of abstention under the *Burford* principle, this circuit generally requires certain factors to be present for abstention to apply: (1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy. If the district court determines that *Burford* abstention is appropriate under the circumstances, dismissal rather than stay of the federal action is normally required.

*Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991) (internal citations omitted). The court will address each factor in turn.

### 1. Nevada has concentrated suits involving the local issue in a particular court

Neither AB 477 nor JCR 16, on its face, relegates certain collection activities to a particular state court. However, as the parties have laboriously briefed, the effect of AB 477 and JCR 16 effectively consign these issues to one of two courts: either justice courts or small claims courts. (*See generally* ECF Nos. 10; 12; 15; 17; 18; 19; 26; 30; 31; 36). NCA argues throughout the briefing in this case that, because AB 477 cap the recovery of attorney fees to 15% of the underlying debt, it "prevent[s] a certain class of litigants (creditors in consumer debt cases) from filing suit for an unpaid debt by making it cost prohibitive to do so." (*See, e.g.,* ECF No. 12 at 7–8, 11, 16–18, 22–24).[1] Consequently, its members will be forced to abandon collection efforts on small debts or bring such collection actions in small claims court. *Id.*

---

[1] For the sake of clarify, the court refers to the CM/ECF system's pagination, not NCA's.

On one hand, Justice Court argues that the interaction of AB 477 vis-à-vis JCR 16 does not deprive NCA's members of access to courts because they can still choose to fund litigation in justice court or represent themselves *pro se* in small claims court. (ECF No. 15 at 8–11). On the other hand, NCA fervently argues that small claims court "is not an adequate or appropriate remedy." (ECF No. 30 at 14). NCA contends that it is purposefully relegated to small claims court, where attorney fees, discovery, and jury trials are disallowed. *Id.* at 14–16.

Thus, because NCA's principal concern is small dollar debt cases, the court finds that the interaction of AB 477 vis-à-vis JCR 16 means that Nevada has concentrated suits involving this local issue—collection of consumer debts in Nevada—in a particular court. Indeed, this conclusion is buttressed by the legislative history of AB 477: "During consideration of A.B. 477, Peter J. Goatz of the Legal Aid Center of Southern Nevada, Inc. testified that **the intent of A.B. 477 was to push debt collection cases into small claims court** 'where attorney's fees are unavailable.'" (ECF Nos. 1 at 14; 19 at 7; 30 at 7; 38 at 6) (emphasis added).

    *2. The federal issues in this case are not easily separable from the myriad of complicated state law issues, which the state courts have special competence to adjudicate*

The principles of comity and federalism warn against interference with state regulatory schemes and the orderly administration of state judiciaries. This action requires the federal district court to do just that, and in no small measure. The court is being asked to review the constitutionality of a state law, AB 477, in light of its interaction with a local state court rule, JCR 16. To further confound the issue, NCA alleges that "the language of AB 477 is inherently vague and ambiguous . . . ." (ECF No. 38 at 4). Notably, for each and every alleged violation of the federal constitution, there is a concomitant provision of the Nevada constitution. *See id.*

Further, the effect of AB 477, taken with JCR 16, is aimed squarely at the regulation of debt collection in Nevada. Indeed, the parties have thoroughly litigated the threshold questions of whether FID is, in fact, the proper party to this action, whether the FID can redress any alleged injury, and what authority AB 477 grants FID. (ECF Nos. 10 at 9–11; 19 at 10–15; 31 at 4–12). Moreover, NCA notes that the effect of AB 477 vis-à-vis JCR 16 conflicts with a myriad of other state laws regarding attorney fees including, *inter alia*, Justice Court Rule of Civil Procedure 68,

Nevada Revised Statute ("NRS") §§ 108.237(1) and 108.239(9)(b), NRS 18.015(1), NRS 116.4117(4), NRS 69.030, NRS 69.050, NRS 38.243(3), NRS 18.010(1) and (2), and NRS 118A.515. (*See* ECF No. 12 at 5).

Accordingly, the federal questions in this case are raised only by the operation of several different provisions of Nevada law and Nevada court rules. Thus, the court cannot reach the federal questions in this case without treading dangerous waters. Rather than stalwartly embrace a complex issue of state law, the court will abstain.

### 3. *Federal review in this case may disrupt state efforts to establish a coherent policy*

As discussed above, Nevada has a complex web of statutes that govern the award of attorney fees in any case. Nevada has, as its own sovereign, a process of administering its own judicial system. Nevada has also developed its own approach and regulatory system to address debt collection actions in its jurisdiction, of which AB 477 is only part. These three, separate policies are each intricate of their own accord but, taken separately, may be appropriate for review in federal court. Taken together, however, the court finds that this action requires addressing the delicate balance that Nevada's legislative, executive, and judicial branches have attempted to strike.

As NCA aptly argues, "[c]ollection agencies are also heavily regulated by state law." (ECF No. 19 at 12). Indeed, as FID points out, its "regulatory power over a collection agency is limited to the duties and responsibilities found in NRS Chapter 649." (ECF No. 10 at 9). It "does not regulate the contract between collection agenc[ies] and their attorneys"; nor does it "regulate the Justice Court's award of attorney fees." *Id.* In short, FID argues that it:

> does not regulate many of [NCA's] members and is limited to Chapter 649 with respect to governing licensed collection agencies. The FID is powerless to take any action with respect to AB 477 and the fees awarded by Justice Court. . . . There has not been and cannot be any threat of enforcement by the FID regarding AB 477, because the Nevada legislature did not delegate the enforcement of AB 477 to the FID.

(ECF No. 31 at 6). And yet, despite FID's arguments, NCA retorts that it "has primary regulatory authority over licensed collection agencies which includes NCA's members." (ECF No. 19 at 10).

NCA's argument then underscores the complexity of Nevada's regulatory scheme, arguing that a variety of NRS chapters make FID a proper defendant in this case. *Id.* at 10–15, 18–20.

Accordingly, the court finds that it would be intervening in Nevada's efforts to establish a coherent policy if it were to adjudicate the instant action. Instead, the court chooses to abstain.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, the federal question raised in this case notwithstanding, the court ABSTAINS from exercising jurisdiction over the instant action pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

IT IS FURTHER ORDERED that the matter of *Nevada Collectors Association v. State of Nevada Department of Business and Industry Financial Institutions Division et al.*, case number 2:20-cv-00007-JCM-EJY, be, and the same hereby is, REMANDED to the Eighth Judicial District Court, Clark County, Nevada.

DATED April 13, 2020.

UNITED STATES DISTRICT JUDGE